UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:21-cr-000578-2(APM) |
| KELSEY WILSON, | : | |
| | : | |
| Defendant. | : | |

# **DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

To compare Mrs. Wilson's conduct as equal or more severe to other defendants that pled guilty to January 6 petty offenses is way off the mark. Creating a penumbra of evidence when there is none should not be tolerated by this Court. They are overreaching in order to give this Court a reason to incarcerate her for 14 days rather than order a sentence of probation, as suggested by the Probation Officer. This request rests on pure speculation of what her conduct was that day. Instead, the government now engages in creating "maybe so's" when there is no evidence supporting what the government argues. These conjectural statements by the government can easily be dismissed by this Court.

At this juncture, the government has committed two logical fallacies of note that hinder their "argument." The first fallacy being a *fallacy of composition*: assuming that a part (Mrs. Wilson) of the whole (the protesters) has all the properties of the whole itself. That is, the government's mistake is thinking that, because Mrs. Wilson is a part of a larger crowd (in which other members of the

1

crowd were indeed violent) she also shares in the same properties as everyone else in the crowd (being violent), but she does not. The first fallacy leads nicely to the government's second fallacy of reason: *petitio principii* or begging the question. This second fallacy is a fault in reasoning where one assumes the conclusion he or she is trying to prove. In this case, the government is assuming their conclusion without producing a valid argument with true premises that leads to that conclusion. Rather, the government is associating Mrs. Wilson with other members of a larger whole and thus foregoing any kind of argument that is specific to Mrs. Wilson. The discussion *infra* explores in more detail these two fallacies.

The government argues that Mrs. Wilson deserves a custodial sentence for four reasons summarized in the introduction to its sentencing memo. They argue that she "(1) entered through the Senate doors, (2) she entered a sensitive area, the Speaker's outer office, (3) "her extensive travels" through the Capitol, and (4) she lied to the FBI. *See* Gov't Sent. Memo at p. 3. That she entered through doors and not the window like a stream of others, is in her favor. She had no idea where she was in the Capitol the entire time, let alone in the Speaker's office. Being in the Capitol for about 20 minutes is by no means "extensive" and she did lie to the FBI-initially. Mrs. Wilson panicked when she and her husband had their surprise visit from the FBI. The agents didn't read her (or her husband) her Miranda rights. They asked her many questions and she thought if she told them right then and

there that she had been inside the Capitol, they would arrest her on the spot (as she had read in media reports) and send her kids to Child Protective Services, who were in the house at the time the FBI showed up unannounced. Within 24 hours, Mr. Wilson spoke again with the FBI and told them the truth. The government fails to tell the Court this critical fact.

The government also argues that "[b]ut for her actions alongside so many others, the riot likely would have failed to disrupt the certification vote" *citing See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC). Gov't sentence memo at p. 3. How can Mrs. Wilson's mere presence be equated to be "support" for disrupting the vote? For example, is it a violation of law to support BLM, even if their mission supports "violent" and "aggressive" actions against law enforcement as a core underlying objective? Would being a peaceful attendee at a BLM protest lead to culpability for violent acts committed at those protests by Antifa? Mrs. Wilson was not violent, aggressive, or antagonistic towards law enforcement nor did she have any intent to support people who behaved that way. The government has conceded that there is no evidence of Mrs. Wilson engaging with law enforcement personally in a violent, aggressive manner or even rude manner. In fact, all evidence shows that when asked to comply with law enforcement directives that day she willingly did so and with a peaceful and respectful demeanor.

Here, the government is arguing that Mrs. Wilson supported violence against law enforcement merely through her presence in a larger group people that day whom Mrs. Wilson neither knew or supported.  *See* fallacy, *supra*. Despite the government claims of one cohesive collection of Trump supporters on some collaborative mission to overrun officers in the Capitol and stop the vote, the people that were there were in fact  diverse with many different reasons for being there that day.  It was a collection of people with diversity in purpose, message and intent.  Some people were there to talk about the danger of vaccines, some to thank Trump for support of law enforcement and our military; there were mothers/women for Trump; there were church groups who came to pray for our nation; and various other groups to include a very small percentage of extremists. Mrs. Wilson had no intention of being with a certain group or behaving violently that day or disrespecting law enforcement and that fact, supported by the evidence of her non-violent and peaceful behavior that day, even though it was wrong, should mitigate against custodial time in this case.

The government continues to make up their own facts out of whole cloth by stating "at a minimum[the defendant] crossed through numerous barriers and barricades."  *See* Gov't brief  at p. 16.  This is the government imagining evidence instead of sticking to the facts before them. The fact is that Mrs. Wilson did not cross through any barrier or barricade that day, although she knew she should not

enter at all. She entered through the door and throughout the Capitol unhindered by law enforcement or signage that suggested the entry was forbidden at any point. She followed hundreds before her. The unfounded speculation that she "may have observed extensive fighting with law enforcement…" is again false and wishful thinking on the part of the government. *Id.*

The government further states that in determining a fair and just sentence on this spectrum, this Court should look to a number of critical factors. The defense agrees, and responds as follows: (1) whether, when, and how the defendant entered the Capitol Building. *Through a door*. (2) whether the defendant engaged in any violence or incited violence; *none.* (3) whether the defendant engaged in any acts of destruction; *none;* (4) the defendant's reaction to acts of violence or destruction; *made her sick to her stomach when she later saw what others did to police officers and the Capitol*; (5) whether during or after the riot, the defendant destroyed evidence; *None;* (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; *less than an 20 minutes; she was a follower in a sea of hundreds if not thousands of other followers and she traveled in multiple areas of the building;* (7) the defendant's statements in person or on social media; *Mrs. Wilson notably did not make any statements on social media and has not discussed this case with anyone but her lawyer and immediate family;* (8) whether the defendant cooperated with, or ignored, law enforcement;

5

*Mrs. Wilson has cooperated to an extent that exceeds the government's request;*

(9) whether the defendant otherwise exhibited evidence of remorse or contrition. *Mrs. Wilson has stated repeatedly that she wished she'd never entered the Capitol and that she wants all this to be behind her. See* P. 16 Gov't Sent. Memo.

Each and every day the defense lawyers in these cases are learning more about what happened that day. Undersigned counsel has received *Brady* evidence in this case and in others that suggests police officers let hundreds of people beyond the barricades and welcomed them onto the capitol grounds. Also, HBO aired a special January 6th program on Friday, October 22nd, 2021, that featured video footage that reportedly has not been previously revealed to the defense lawyers in these cases. Additionally, The Senate Report entitled "Examining the U.S. Capitol Attack:  A Review of the Security, Planning, and Response Failure on January 6" issued in June 8, 2021 found that federal Intelligence failed to issue a threat assessment warning of potential violence targeting the Capitol on January 6. That failure contributed to the United Stated Capitol Police (hereinafter "USCP") being inadequately prepared to prevent or respond to the January 6 security threats. The failures in both intelligence and planning were found to have contributed to the breach of the Capitol.  According to the report, the USCP did not have proper plans in place to address the situation from a staffing perspective nor were USCP Officers trained or equipped to defend against the January 6 attack. To say that

Mrs. Wilson's mere presence in the Capitol was even a significant contributing factor to the law enforcement's failed efforts to keep the Capitol safe is just not true. There were a myriad of factors that day that contributed to how the day played out, and we are still finding out more as the days go on. The Senate report noted that:

> USCP leadership also failed to provide front-line officers with effective protective equipment or training. Although USCP activated seven specialty Civil Disturbance Unit ("CDU") platoons in advance of the Joint Session, only four of those platoons were outfitted with special protective equipment, including helmets, hardened plastic armor, and shields. The many other USCP officers who fought to defend the Capitol were left to do so in their daily uniforms. Many of those front-line officers had not received training in basic civil disturbance tactics since their initial Recruit Officer Class training. While some CDU officers were issued special protective equipment, the platoons were not authorized to wear the equipment at the beginning of their shifts. Instead, USCP staged equipment on buses near the Capitol. In at least one instance, when the platoon attempted to retrieve the equipment, the bus was locked, leaving the platoon without access to this critical equipment.

Finally, the government points the Court to three cases that it considers comparable to Mrs. Wilson's case: Andrew Ericson, Spencer and Miller. (will finish this). Undersigned counsel gets the sense that the government is not trying to backtrack their earlier charging decisions and recommendations as to sentencing. *See* Gov't sent. Memo at p. 20, fn. 3.  Undersigned counsel represented Mr. Ericson. His actions are what the government describes in their memo. Mrs. Wilson did nothing of the kind. Virginia Marie Spencer took her teenage son along

with her to the riot-another fact the government conveniently omits yet was the driving force behind Judge Collar-Kottely's custodial sentence in the case. With regard to the Miller case, days after January 6th, Ms. Miller showed no contrition which is what sent Judge Chutkan over the edge."

A prison sentence in a case where mere presence landed Mrs. Wilson in federal court as a defendant would be a grave injustice.  Mrs. Wilson implores the Court to give her a sentence that is commensurate with her individual behavior and only her behavior.  That is to say, Mrs. Wilson's actions are importantly different than other defendants who have received jail time.  It is for this reason, that is makes no sense to prescribe the same punishment on Mrs. Wilson.

                              Respectfully submitted,

By: \_\_\_\_\_/s/_____
KIRA ANNE WEST
DC Bar No. 993523
712 H. St NE, Unit #509
Washington, D.C. 20002
Phone: 202-236-2042
kiraannewest@gmail.com

CERTIFICATE OF SERVICE

I hereby certify on the 26th   day of January, 2022, a copy of same was delivered to the parties of record, by email  pursuant to the Covid standing order and the  rules of the Clerk of Court.

/S/<br>Kira Anne West